

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 5, 2014**

**United States Bankruptcy Judge**

_____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| IN RE: § | |
| § | Bankr Case No. 12-32785-BJH |
| H&M OIL & GAS, LLC, § | (Chapter 7) |
| § | |
| DEBTOR. § | |
| § | |
| § | |
| DOUGLASS J. BRICKLEY, CHAPTER § | Adv. Proc. No. 13-3066-BJH |
| 7 TRUSTEE, § | |
| § | Related to Dkt. Nos. 123 & 136 |
| PLAINTIFF, § | |
| v. § | |
| § | |
| SCATTERED CORPORATION and § | |
| LEON A. GREENBLATT, III, § | |
| § | |
| DEFENDANTS. § | |
| § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are two *Daubert* motions filed by the Defendants, specifically: (1) Scattered Corporation's Motion to Bar Expert Testimony at Trial [Dkt. No. 123] and Brief in Support of Motion to Bar Expert Testimony at Trial [Dkt. No. 124] (the **"Scattered Motion"**); and (2) Leon A. Greenblatt, III's Motion to Exclude John Bittner as an Expert Witness and Brief in Support [Dkt. No. 136] (the "**Greenblatt Motion**" and, together with the Scattered Motion, the "*Daubert* **Motions**"). Plaintiff Douglas J. Brickley, Chapter 7 trustee (the "**Trustee**") for H&M Oil and Gas, LLC ("**HMOG**"), opposes the *Daubert* Motions and filed his response and brief in opposition on May 26, 2014 [Dkt. No. 140] (the "**Trustee's Response**"). By agreement of the parties, the *Daubert* Motions were set for hearing on Friday, May 30, 2014 at 1:30 p.m. (the "*Daubert* **Hearing**"). Trial of this adversary proceeding is scheduled to commence on June 9, 2014 at 9:00 a.m. This Memorandum Opinion and Order contains the Court's findings of fact and conclusions of law with respect to the *Daubert* Motions.

I. **Applicable Legal Standard**

Federal Rule of Evidence 702 serves as the proper standard for determining the admissibility of expert testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597–98 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. *Daubert* and its principles apply to both scientific and non-scientific expert testimony. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147 (1999). The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible. *See* FED. R. EVID. 104(a); *Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 276 (5th Cir. 1998).

*Daubert* directs that the trial court determine admissibility under Rule 702 by following the directions provided in Rule 104(a). *Daubert*, 509 U.S. at 592. When making its determination under Rule 104(a), "the court is not bound by evidence rules, except those on privilege." FED. R. EVID. 104(a).

Experts need not be highly qualified to testify, and differences in expertise go to the weight of the testimony, rather than admissibility. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Nonetheless, courts need not admit testimony that is based purely on the *ipse dixit* of the expert. *Gen. Elec. Co. v. Joinder*, 522 U.S. 136, 146 (1997); *Moore,* 151 F.3d at 276. Further, even if the expert is qualified, the basis of his opinion must be reliable and the underlying methodology must have been correctly applied to the case's particular facts in order for his testimony to be relevant. *Daubert*, 509 U.S. at 593; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). "In short, expert testimony is admissible only if it is both relevant and reliable." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002).

Expert witnesses may base opinions on facts or data that the expert "has been made aware of or personally observed." FED. R. EVID. 703. If the facts and data relied on are the sorts that experts in that field would reasonably rely on, then those facts "need not be admissible for the opinion to be admitted." *Id*. Accordingly, experts may base their opinions on otherwise-inadmissible information, such as hearsay, so long as the information is the sort reasonably relied

on in the expert's field. *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013).

The purpose of Rule 703 is largely practical – experts generally base their opinions on information which, to be admissible in court, would entail "the expenditure of substantial time in producing and examining various authenticating witnesses." *Id.* (quoting FED. R. EVID. 703, advisory committee's note). "Because experts may use their past experience and professional judgment to make critical decisions on the basis of such information outside of court, Rule 703 was intended 'to bring the judicial practice into line with the practice of the experts themselves when not in court.'" *Id.* at 524 (quoting FED. R. EVID. 703, advisory committee's note). Courts nevertheless must serve a gate-keeping function with respect to Rule 703 opinions to ensure "the expert isn't being used as a vehicle for circumventing the rules of evidence." *Id.* (quoting *In re James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992)). "Rule 703 'was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion.'" *Id.* (quoting *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.,* 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005)). The rule "was never intended to allow oblique evasions of the hearsay rule." *Id*. (quoting *Loeffel,* 387 F. Supp. 2d at 808).

**II.     The Standard As Applied Here**

Defendants Leon A. Greenblatt, III ("**Greenblatt**") and Scattered Corporation ("**Scattered**") (together, the "**Defendants**") assert that the testimony of John Bittner of PriceWaterhouseCoopers LLP, as well as the Expert Report of John Bittner of PriceWaterhouseCoopers LLP and the Amended Expert Report of John Bittner of PriceWaterhouseCoopers LLP (collectively, the "**Bittner Report**"), must be excluded from trial

because Bittner's opinion (as stated in the Bittner Report) is neither reliable nor relevant. With respect to reliability, the Defendants pose three main arguments. First, Bittner intentionally ignored material facts in coming to his opinion. Second, Bittner is not an oil and gas engineer or expert; however, his valuation opinion is based on the foundation of an oil and gas reserve report compiled by Russell K. Hall ("**Hall**") of Russell K. Hall and Associates, Inc. dated November 28, 2012 (the "**Hall Reserve Report**"). Hall, however, has not been designated as an expert in this case. As such, the Defendants argue that, without the admission of the Hall Reserve Report (and Hall's opinions contained therein), Bittner's testimony will "rest on air." Greenblatt Motion at ¶ 43. Third, the Defendants point out that, in his report, Bittner reclassified two wells from Proved Undeveloped ("**PUD**") to Proved Developed ("**PDP**") based solely on the instruction of the Trustee's counsel, which is both legally impermissible and represents an opinion that Bittner is not qualified to render.

With respect to relevance, Greenblatt argues that Bittner's opinion as stated in the Bittner Report (1) fails to disaggregate damages as to him, instead presenting damages as a lump sum despite suing Greenblatt for "a laundry list of alleged wrongs;" Greenblatt Motion at ¶¶ 47-55, and (2) is not evidence of Greenblatt's breach of fiduciary duty damages,[1] *id.* at ¶¶ 56-58.

In the Trustee's Response, the Trustee argues, *inter alia*, that Bittner's expert opinion as contained in the Bittner Report, and the methodology he relied on in coming to his opinion, are reliable and credible. The Trustee further argues that Bittner's reliance on the Hall Reserve

---

[1] By way of background, the Trustee has sued Scattered for breach of the debtor-in-possession financing agreement (the "**DIP Agreement**") previously approved by this Court in HMOG's bankruptcy case. The Trustee has also sued Greenblatt for, among other things, breach of fiduciary duty for his actions in relation to the DIP Agreement. As reflected in the Bittner Report, Bittner "was asked by Counsel to quantify any damages resulting from Scattered Corporation's … failure to provide Debtor-in-Possession … financing … authorized by the Court…." Bittner Report [Dkt. 124-1] at ¶ 2 (Overview of Assignment). Greenblatt argues that, because of this express limitation in Bittner's engagement, the Bittner Report is not relevant to damages claimed by the Trustee related to Greenblatt's alleged breaches of fiduciary duty; instead, it is only relevant as to damages claimed by the Trustee related to Scattered's alleged breach of contract.

MEMORANDUM OPINION AND ORDER                                             5

Report in coming to his valuation opinion, which led to his damages opinion,[2] is appropriate and usual. According to the Trustee, "[w]ithout question, valuation experts in the oil & gas field use reserve reports in order to make valuation determinations . . . .," citing to an article written by Rhett G. Campbell and Ira L. Herman. Trustee's Response at ¶ 17. Moreover, the Trustee argues that the valuation methodology utilized by Bittner to determine the value of HMOG's assets, which led to his damages opinion, is supported by peer review and is accepted as valid in the relevant scientific community as well as in the courts.

Before turning to what happened at the *Daubert* Hearing, further discussion of two of the Defendants' reliability challenges is warranted. With regard to the Defendants' arguments that the Bittner Report must be excluded because the foundation for it is the Hall Reserve Report, which cannot be admitted in evidence due to the Trustee's failure to designate Hall as an expert witness at trial, the Defendants rely largely on *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794 (N.D. Ill. 2005). As relevant here, *Loeffel* addressed the application of Rule 703 to expert testimony. There, the magistrate judge determined that an expert's testimony violated Rule 703 because the numbers he relied on to determine economic loss damages "came from the defendants' employees, on whom [the expert] uncritically relied." *Id.* at 807. Notably, the expert had little understanding of the underlying industrial processes that he was evaluating and "brought no expertise to bear on the underlying assumptions on which his economic loss theory was based . . . ." *Id.* The magistrate judge found that Rule 703 "was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in

---

[2] Bittner's damage opinion is a simple math equation that anyone could do. He simply takes his calculated value of HMOG's assets as of October 4, 2012 of $80.2 million (derived from the data and opinions set forth in the Hall Reserve Report and, to a lesser extent, a report prepared by Alvarez & Marsal Valuation Services, LLC (the "**A&M Report**") from which he subtracts $66 million (the amount credit bid by Prospect Capital Corporation at a Court approved sale of HMOG's assets on March 8, 2013) to derive his opinion that the "[d]amages resulting from [Scattered's] failure to provide DIP financing in accordance with the terms and provisions of the DIP Agreement are $14.2 million…." Bittner Report at ¶ 15.

MEMORANDUM OPINION AND ORDER    6

effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Id.* at 808.

The Fifth Circuit discussed the *Loeffell* opinion in *Factory Mut. Ins. Co. v. Alon USA, L.P.*, 705 F.3d 518 (5th Cir. 2013). In *Factory Mutual*, various entities (collectively "**Alon**") owned and operated an oil refinery in Big Spring, Texas. *Id.* at 519. Alon relied on the equipment and services of a third party ("**Veolia**") for on-site water treatment and waste management. *Id.* The equipment located in the waste treatment facility referred to as the "Scalfuel plant" was owned and operated by Veolia and insured by Factory Mutual Insurance Co. ("**FM**"). *Id.* On February 18, 2008, a cloud of vapor exploded at the Scalfuel plant, destroying it. *Id.* Veolia filed a claim with FM in the amount of $6,106,880, which FM paid in accordance with the insurance policy. *Id.* Later, on February 17, 2010, FM filed a subrogation claim against Alon to recover damages stemming from the explosion, alleging that Alon's negligence both directly and proximately caused the damages at issue. *Id.* Alon stipulated as to liability, leaving only the issue of damages to be determined, which the parties agreed would be determined by the fair market value of the Scalfuel plant before the explosion. *Id.*

FM presented an expert appraiser ("**Miles**") to testify regarding the value of the Scalfuel plant. *Id.* at 524. Part of the testimony offered by Miles dealt with the remaining life of the original Scalfuel plant at the time of the explosion, which was a necessary part of calculating damages. *Id.* Since the original equipment was no longer available, Miles met with individuals who were purportedly familiar with the original Scalfuel plant and attempted to educate them regarding "what depreciation is made up of and how you calculate it." This is a method Miles had apparently used in the past. *Id.* The district court permitted Miles to testify over Alon's objection.

On appeal, Alon argued that the lower court abused its discretion by allowing Miles to testify regarding estimated depreciation because "Miles knew that physical depreciation had occurred ... but he did nothing to calculate that depreciation" beyond relying on a figure estimated by Veolia employees. *Id.* Among the cases cited to by Alon was *Loeffel* for the proposition that Miles was impermissibly acting as a "mouthpiece" because his testimony relied solely on interviews with Veolia employees. *Id.* at 524-25. The Fifth Circuit, however, held that:

> [i]nsofar as he educated and interviewed Veolia employees, Miles did more than just repeat information gleaned from external sources. *Cf. Mejia*, 545 F.3d at 198 (The witness "did not analyze his source materials so much as repeat their contents. [He] thus provided evidence to the jury without also giving the jury the information it needed" to consider the reliability of the underlying sources.). Furthermore, Miles demonstrated his familiarity with the appraisal of heavy industrial plants broadly, even if he had little experience with Scalfuel plants in particular. *Cf. Loeffel*, 387 F. Supp. 2d at 807 (stating as "undisputed" the fact that the expert witness had no experience with the relevant machinery and was "incapable of assessing the validity of the information provided . . . .").

*Id.* at 525. The Fifth Circuit found that the district court was in the best position to evaluate "whether Miles *uncritically* relied upon the depreciation figures given to him by Veolia's employees through his testimony." *Id.* (emphasis added). The Fifth Circuit ultimately affirmed the district court's admission of Miles' testimony finding, among other things, that "Miles did clearly state that the sort of information relied upon here – the opinions of others – is the sort of information reasonably relied upon by appraisers." *Id.*

With this precedent in mind, the Court will now return to the parties' respective arguments. According to the Defendants, "'Bittner's 'professional knowledge and ability' are not adequate to evaluate [the] calculations and opinions upon which he based his opinion, that is, the Hall Report. 'A scientist, however well-credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty. That would not be responsible science.'"

Greenblatt Motion at ¶ 44. In short, the Defendants argue that the Bittner Report is based upon an unreliable foundation because the starting point of Bittner's analysis and opinion is the data and opinions contained in the Hall Reserve Report, which (1) Bittner did not "audit or verify," Bittner Report at ¶ 29; (2) Bittner is not qualified to evaluate; and (3) cannot be admitted into evidence because the Trustee failed to designate Hall as an expert witness at trial.

After a careful review of the Bittner Report and the Hall Reserve Report in preparation for the *Daubert* Hearing, the Court understands why the Defendants are concerned about the reliability of the Bittner Report. From its detailed review of both reports, it is clear to the Court that if there are errors in the Hall Reserve Report, the calculations performed by Bittner will also be erroneous, rendering his opinion of value, and then damages, incorrect. Based upon its review of Bittner's Curriculum Vitae, attached as Exhibit 1 to the Bittner Report, the Court also understands the Defendants' assertion that Bittner, as a CPA, is not qualified to attest to the reliability of the data and opinions contained in the Hall Reserve Report, which was prepared by Hall, a licensed Texas petroleum engineer. Given that Hall was not designated as an expert by the Trustee in connection with the upcoming trial, the Defendants are understandably concerned that the Trustee is attempting to get Hall's opinions into evidence through a non-qualified "mouthpiece," – *i.e.*, Bittner. *See Factory Mut. Ins. Co.*, 705 F.3d at 524-25; *Loeffel,* 387 F. Supp. 2d at 808.

The Court now turns to the Defendants' reliability concern that is based upon Bittner's alleged decision to blindly follow the Trustee's counsel's instruction to reclassify two wells from PUD to PDP. Here, the Court similarly understands why the Defendants are concerned. If true – *i.e.*, Bittner had no basis upon which to conclude that, with additional funding, the two wells

would have been completed and become proved developed wells, his calculation of value in the Bittner Report would be overstated, resulting in an incorrect damage opinion.

Moreover, there is legal authority supporting the Defendants' concern in this regard. Specifically, "when an expert relies upon information given to him by a party or counsel, [he] must independently verify that information before utilizing it in [his] calculations." *State Farm Fire & Cas. Co. v. Electrolux Home Prods., Inc.*, 2013 WL 5770343, at *12 (N.D. Ind. June 17, 2013) (quoting *King-Indiana Forge, Inc. v. Millennium Forge, Inc*., 2009 WL 3187685, at *2 (S.D. Ind. Sept. 29, 2009)); *Black and Decker v. Bosch Tools*, 2006 WL 5156873, at *1 (N.D. Ill. Sept. 8, 2006); *see also In re TMI Litig.*, 193 F.3d 613, 697–98 (3d Cir. 1999) (upholding exclusion of expert testimony where sole basis for the testimony was summaries prepared by party's attorney); *Lyman v. St. Jude Med. S.C., Inc.,* 580 F. Supp. 2d 719, 726 (E.D. Wis. 2008) (excluding expert testimony where expert failed to verify the reliability of data given to him by counsel); *Crowley v. Chait*, 322 F. Supp. 2d 530, 546–47 (D.N.J. 2004) (where expert relied upon summaries prepared by counsel and conducted little independent investigation, "to allow him to offer testimony to a jury as to conclusions he has reached on the basis of this highly filtered version of events, is unacceptable").

With this background firmly in mind, the Court will turn to a discussion of what happened (or did not happen) at the *Daubert* Hearing. After the Defendants' opening arguments, the Trustee's counsel began his argument in support of the admissibility of the Bittner Report; however, Bittner was not present in the courtroom. After listening to the Trustee's counsel's argument for several minutes, the Court became concerned that the Trustee was not planning to introduce any evidence at the *Daubert* Hearing. Given the Court's understanding that the Trustee, as the proponent of the Bittner Report, must demonstrate by a preponderance of the

evidence that Bittner's opinion of value and resulting damages are based upon an appropriate methodology and are therefore reliable, the Court asked the Trustee's counsel if he intended to introduce evidence in support of the admissibility of the Bittner Report. Counsel initially responded "I am not," because he believed that the *Daubert* Hearing would simply involve legal argument by counsel. Being concerned by this answer, the Court again asked if the Trustee's counsel had any evidence to present. The Trustee's counsel reiterated that he thought his legal argument in opposition to the *Daubert* Motions would suffice. After a third inquiry from the Court, the Trustee's counsel picked up on the fact that perhaps evidence was necessary and asked the Court to admit four documents into evidence (collectively, the "**Documentary Evidence**"): (1) the Bittner Report; (2) the transcript of Bittner's deposition taken by the Defendants (the "**Bittner Deposition**");[3] and (3) the documents filed at Dkt. Nos. 206 and 206-1 in HMOG's bankruptcy case, which are, per the Trustee's counsel, "Mr. Greenblatt's attempt at valuation."[4]

Greenblatt's counsel objected to the admission of the Documentary Evidence. Specifically, counsel argued that (1) Dkt. Nos. 206 and 206-1 must be proven up by Greenblatt, who was not present at the *Daubert* Hearing; (2) Bittner is an expert under the Trustee's control and, under Rule 804, he must be unavailable in order for his deposition to be admissible; and (3) the Bittner Report could not be authenticated without Bitter taking the stand. In response, the Court once again inquired whether the Trustee's counsel would call Bittner to testify at the *Daubert* Hearing, and the Trustee's counsel confirmed that he would not. The Court then sustained the objections.

---

[3] A copy of the Bittner Deposition may be found at Dkt. No. 140-1.

[4] The documents at Dkt. Nos. 206 and 206-1 were not prepared or analyzed by Bittner, nor is Greenblatt a purported valuation expert. As such, the Court cannot see the relevance of such documents to its determination of the reliability of the Bittner Report under Rules 702 and 703.

Thereafter, the evidence was closed and closing arguments were made. The Court took the *Daubert* Motions under advisement and told the parties that it would attempt to issue a decision on the *Daubert* Motions as quickly as possible.

While preparing this Memorandum Opinion and Order over the weekend following the Friday afternoon *Daubert* Hearing, the Court realized that it had erred in refusing to admit the Documentary Evidence in light of Rule 104(a), which states that, in conducting its preliminary assessment of the admissibility of evidence, "the court is not bound by evidence rules, except those on privilege." Accordingly, the Court scheduled a telephonic status conference with the parties on the Monday morning following the *Daubert* Hearing (June 2) to discuss this issue with the parties. At the status conference, the Court (1) informed the parties of its concern that it should have admitted the Documentary Evidence at the *Daubert* Hearing; and (2) established a schedule for (i) the parties to file designations and counter-designations of the portions of the Bittner Report and the Bittner Deposition that establish or refute the threshold requirements for admissibility of the Bittner Report under Rules 702 and 703; and (ii) for the Defendants to respond to an unsolicited post-hearing supplement filed by the Trustee on Sunday evening (June 1) [Dkt. No. 157] (the "**Trustee's First Post-Hearing Supplement**").[5]

On June 3, 2014, the Trustee filed his second post-hearing supplement [Dkt. No. 158] (the "**Trustee's Second Post-Hearing Supplement**"), which went well beyond what the Court had asked for – *i.e.*, to provide record designations from the Bittner Report and the Bittner Deposition. While the Trustee's counsel acknowledged the scope of the Court's request in this supplement and responded that that he had "reviewed the Bittner Expert Report and the Bittner Deposition and did not locate any specific designations to provide to the Court," *id.* at ¶ 2,

---

[5] Presumably after conducting post-hearing research on his burden of proof at the *Daubert* Hearing, the Trustee's counsel filed the Trustee's First Post-Hearing Supplement, the substance of which will be addressed later in this Memorandum Opinion and Order.

counsel proceeded to use this supplement to re-urge his arguments and, even more troubling, to attempt to supplement the *Daubert* Hearing evidentiary record with information that was available to him, but not offered into evidence, at the *Daubert* Hearing.[6]

The arguments in the Trustee's First Post-Hearing Supplement can be broken down into four categories. First, counsel apologizes "for his apparent misunderstanding that the Court intended to conduct a full evidentiary hearing on the [*Daubert*] Motions," but then argues that his misunderstanding is understandable given the Court's discretion on how it can handle such hearings and that "it bears noting that there is no clear cut 'rule' that requires an 'evidentiary' hearing on *Daubert* motions be held."[7] Second, counsel argues that, in a bench-trial setting, *Daubert* hearings can be held in a "very preliminary, informal manner without the need for witnesses to authenticate the expert report or other documents, primarily due to the relaxed evidentiary requirements set forth in Rule 104(a)."[8] Third, *Daubert* and its progeny are intended to prevent "bogus" science and "crackpot" scientists from influencing unsophisticated juries; but here, as reflected in his Curriculum Vitae and the Trustee's prior pleadings, Bittner is an experienced oil and gas valuation expert whose methodology is supported by "pertinent case law and articles on valuation" and is reliable.[9] Finally, counsel asks that this Court not penalize the Trustee for his counsel's misunderstanding regarding the scope of the *Daubert* Hearing.[10]

The Court will address these arguments in turn, as well as the Defendants' response to these arguments [Dkt. No. 159] (the "**Defendants' Post-Hearing Response**"). First, as noted by

---

[6] These documents include (1) Rhett G. Campbell and Ira L. Herman, *Valuing Oil & Gas Reserves,* TURNAROUND MGMT. ASS'N (Oct. 3, 2008), http://www.turnaround.org/Publications/Articles.aspx?objectID=9783 [Dkt. No. 158-1]; (2) Robert Bryan, *Oil and Gas vs. Other Sectors*, 8 THE WAY AHEAD, no. 3, 2012 at 11 [Dkt. No. 158-2]; (3) Scott Pinsonnault, Arthur Wright, and Emily Tubb, *Oil and Gas Reserve Reports: A Basic Overview and Key Issues for Practitioners*, 29 AM. BANKR. INST. J. 52 (2010) [Dkt. No. 158-3]; and (iv) the A&M Report [158-4].

[7] Trustee's First Post-Hearing Supplement at ¶¶ 1-2.

[8] *Id.*

[9] *Id.* at ¶ 3.

[10] *Id.* at ¶ 4.

the Defendants, the Trustee cites to several cases that hold that it is not an abuse of discretion to forego a formal *Daubert* hearing. *See Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999); *Hebbler v. Turner*, 2004 WL 414821 (E.D. La. March 3, 2004). None of the cited cases, however, have held that it is an abuse of discretion *to hold* a *Daubert* hearing. Indeed, the *Hebbler* court expressly held that:

> [w]hen expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony. *Moore v. Ashland Chemical, Inc.,* 151 F.3d 269 (5th Cir. 1998). To meet this burden, the defendants cannot simply rely on their expert's assurances that she has utilized generally accepted scientific methodology. Rather, some objective, independent validation of the expert's methodology is required. *Id.*

*Hebbler*, 2014 WL 414821, at *3. Similarly, in *Padillas*, the Third Circuit stated that "[w]e have long stressed the importance of *in limine* hearings under Rule 104(a) in making the reliability determination required under Rule 702 and *Daubert*." *Padillas,* 186 F.3d at 417. The Trustee's counsel also cites to *U.S. v. John*, 597 F.3d 263, 274 (5th Cir. 2010), which simply held that a *Daubert* hearing was not necessary in the context of fingerprint evidence, and *Murray v. Marino Dist. Dev. Co.,* 311 Fed. App'x 521, 523 (3d Cir. 2008), which held that it was not an abuse of discretion to forego a *Daubert* hearing when the record before the court, including the expert report, the expert's deposition testimony, and the parties' briefs, was sufficient to ascertain the expert's methodology and make a proper reliability determination under *Daubert*.

There is simply nothing in the Trustee's cited cases suggesting that this Court somehow abused its discretion in deciding to hold a formal hearing to consider the *Daubert* Motions, particularly in light of the questionable foundation of the Bittner Report, as discussed above. Indeed, under the Rules of Evidence, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589.

Second, "[w]hen expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony." *Moore*, 151 F.3d at 276. The Trustee's counsel's misunderstanding, while unfortunate, does not alleviate that burden of proof or somehow shift the burden to the Defendants to prove inadmissibility.

As previously explained, the Documentary Evidence is properly before the Court in connection with the *Daubert* Hearing. But, the Documentary Evidence does nothing to establish the reliability of the Bitter Report, as the Trustee admits in his Second Post-Hearing Supplement. Notably, Bittner never testified in his deposition that the data and opinions from the Hall Reserve Report, that he used as the starting point for his expert analysis and opinion in the Bittner Report, is of a type reasonably relied on by experts in his field in forming an opinion such as the opinion he formed here. Nor does he make such a statement in the Bittner Report. As the Fifth Circuit explained in *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998) (*en banc*),

> [p]rocedurally, *Daubert* instructs us that the district court must determine admissibility under Rule 702 by following the directions provided in Rule 104(a). Rule 104(a) requires the judge to conduct preliminary fact-finding and to make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.
>
> Thus, the party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable. This requires some objective, independent validation of the expert's methodology. The expert's assurances that he has utilized generally accepted scientific methodology is [*sic*] insufficient. The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable.

*Id.* at 276 (citations omitted) (internal quotation marks omitted).

Here, the Trustee simply failed in his proof. Legitimate issues regarding the reliability of the foundation for the Bittner Report – *i.e.*, the Hall Reserve Report – were raised in the *Daubert* Motions. It was the Trustee's burden to prove that data and opinions like those found in the Hall

Reserve Report are of a type reasonably relied on by valuation experts in forming opinions about the value of oil and gas assets and the corresponding amount of damages in a breach of contract action such as this. Nothing in the Documentary Evidence addresses this threshold issue.

In addition, there was nothing in the Documentary Evidence that explained why it was appropriate for Bittner to conclude that, with additional funding, the two wells in question, which were classified as PUD wells in the Hall Reserve Report, would have been completed and become PDP wells. In fact, Bittner's deposition testimony suggests that there was no basis for this "conclusion" on his part, other than it was made at counsel's instruction. Specifically, Bittner testified as follows:

> Q. While we're on that page, on Item No. 2 it says – well, we can all read what it says. Who requested that the PUD wells be reclassified?
>
> A. Mr. Kilmer.
>
> Q. Why did he request that?
>
> A. Because had those two – my understanding is had the DIP been fully funded, the drilling program of H&M completed, those two wells would have been drilled and completed.
>
> Q. Did you – did you check to make sure that that statement was correct or not?
>
> A. It was consistent with what was in the complaint, but I did not review detailed information about the debtor's drilling program.

Bittner Deposition, 70:2 – 70:14.

Without more supporting Bittner's decision to reclassify these two wells, the Bittner Report is not reliable. And, of significance, when asked in his deposition about the effect of this reclassification on his opinion of value, he admitted that it had increased the value of the debtor's assets (and thus his damage calculation). But, when asked to quantify the amount of the increase, he testified that he "didn't know. [He] didn't calculate the value of that individually." *Id.* at 84:2 – 84:3.

MEMORANDUM OPINION AND ORDER                                                                                     16

Finally, when the Trustee's counsel asks in his Second Post-Hearing Supplement that his misunderstanding of what would occur at the *Daubert* Hearing not be held against the Trustee, counsel is asking for a "do-over" of the *Daubert* Hearing – *i.e.,* by (1) attempting to supplement the evidentiary record *after* the close of evidence with the documents attached to, and referenced in, his two post-hearing supplements; and (2) suggesting that the Defendants can cross-examine Bittner about this at trial. Not surprisingly, the Defendants object to any "do-over." *See* Defendant's Post-Hearing Response at §§ G-F.

There will be no "do-over" here. The *Daubert* Motions were timely filed by the Defendants. With the agreement of the parties, the Court held the *Daubert* Hearing in advance of trial. The case law is clear that the proponent of the expert evidence – here the Trustee – had the burden of proof at the *Daubert* Hearing. The Court repeatedly asked the Trustee's counsel during the *Daubert* Hearing whether he intended to call Bittner (who maintains his office in Dallas) to testify at the *Daubert* Hearing. Counsel repeatedly replied in the negative and at no point requested a continuance of the hearing so that he could procure Bittner's attendance. The evidentiary record was closed following the offer of the Documentary Evidence. Closing arguments were made, after which the Court took the *Daubert* Motions under advisement.

Two days later, the Trustee's First Post-Hearing Supplement was filed and, two days after that, the Trustee's Second Post-Hearing Supplement was filed with additional documents attached. While the Court will not admit those additional documents into evidence, as the evidentiary record was closed by acknowledgement of counsel on May 30, 2014, even if the additional documents were admitted into evidence, the Trustee has still failed to carry his burden of proof under Rules 702 and 703, as those additional documents do not establish, among other things, that (1) Bittner took any steps to independently verify the contents or accuracy of the Hall

MEMORANDUM OPINION AND ORDER                                                                                    17

Reserve Report that serves as the foundation for the Bittner report, *see Factory Mut. Ins. Co.,* 705 F.3d at 524-25; or (2) Bittner had a reasonable basis to reclassify the two wells from PUD to PDP, *see Lyman,* 580 F. Supp. 2d at 726. Although the Trustee argues that the articles attached to his Second Post-Hearing Supplement show that reserve reports are relied on by valuation experts, there is nothing in the proposed supplemental record to indicate that experts in the field of valuation "reasonably rely" on valuation reports without taking any steps to verify the accuracy of such reports (for example, by speaking with the expert who compiled the reserve report). *See Factory Mut. Ins. Co.,* 705 F.3d at 524-25; *Loeffel*, 387 F. Supp. 2d at 808. In short, admission of the additional documents would do nothing to change this Court's finding that the Trustee failed in his proof under Rules 702 and 703.

While the Trustee's post-hearing supplements were filed before the Court ruled on the *Daubert* Motions, and thus a motion to reconsider under Federal Rule of Civil Procedure 60(b) for "mistake, inadvertence, surprise, or excusable neglect" by the Trustee's counsel would be premature, the supplements read much like a Rule 60(b) motion. *See* FED. R. CIV. P. 60(b)(1) (as made applicable by FED. R. BANK. P. 9024). But, even Rule 60(b) would not permit a "do-over" here. While Rule 60(b)(1) allows relief for mistake, inadvertence, surprise, or excusable neglect, those terms are not wholly open-ended. *Pryer v. U.S. Postal Serv.,* 769 F.2d 281, 286 (5th Cir. 1985). "Gross carelessness is not enough. Ignorance of the rules is not enough, nor is ignorance of the law." *Id*. (citing to 11 Wright & Miller, Federal Practice and Procedure § 2864 at 214-15). Indeed, the Fifth Circuit has held that a court would abuse its discretion if it were to reconsider a matter under Rule 60(b)(1) when the reason asserted as justifying relief is one attributable solely to counsel's carelessness with or misapprehension of the law or the applicable rules of court. *Pettle v. Bickham (In re Pettle)*, 410 F.3d 189, (5th Cir. 2005); *Edward H. Bohlin*

*Co. v. Banning Co.*, 6 F.3d 350, 357 (5th Cir. 1993). Further, "if the failure of the party to submit the evidentiary materials in question is attributable solely to the negligence or carelessness of that party's attorney, then it would be an abuse of discretion for the court to reopen the case and to consider the evidence." *Knapp v. Dow Corning Corp.*, 941 F.2d 1336, 1338 (5th Cir. 1991). "Where a party makes a considered choice … he cannot be relieved of such a choice [under Rule 60(b)] because hindsight seems to indicate to him that, as it turns out[,] his decision was probably wrong." *Pettle*, 410 F.3d at 193 (citations omitted) (internal quotations omitted).

Given the Trustee's failure of proof at the *Daubert* Hearing,[11] the *Daubert* Motions must be granted. Bittner shall not be permitted to testify and the Bittner Report shall not be admitted into evidence at trial.

**SO ORDERED**.

**# # # END OF MEMORANDUM OPINION AND ORDER # # #**

---

[11] Given (1) that this Court is attempting to issue this Memorandum Opinion and Order as quickly as possible to facilitate the parties' trial preparation; and (2) this ruling with respect to the reliability of the Bittner Report, it is not necessary to address the additional reliability challenge or the relevance challenges made by the Defendants to the Bittner Report.